IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONALD E. BUDD, JR. and
CENTRAL PAWN, INC.,

      Plaintiffs,

      vs.                             Case No. 12-2431-JTM

UNIFIED GOVERNMENT OF WYANDOTTE
COUNTY/KANSAS CITY, KANSAS, *et al.*,

      Defendants.


MEMORANDUM AND ORDER


Plaintiff Donald Budd, Jr., a Wyadotte County, Kansas pawn shop owner, alleges that certain Kansas City, Missouri police officers violated his constitutional rights when they retrieved an allegedly stolen lawn mower. He also alleges that two Kansas City, Kansas police officers improperly aided the Missouri officers, and that the Unified Government of Wyandotte County/Kansas City, Kansas illegally released the mower to its putative owner. Both the Kansas and Missouri defendants have moved to dismiss the action, relying upon the Supreme Court's recent decisions *in Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

*The Complaint*

Plaintiff Don Budd, Jr. is the owner of Central Pawn of Wyandotte County, Kansas. The Petition alleges that on May 27, 2011, Budd bought a Wright standup mower from Junior Rodriguez for $1,300. Rodriguez warranted that the mower was not rented, leased, stolen, or the property of anyone else, and Central Pawn complied with the reporting and holding requirements of K.S.A. 16-715.

Because the mower did not fit inside the Central Pawn building, Budd took it to a storage facility next to his personal residence in Kansas City, Kansas, for storage. Budd frequently uses the storage facility to store Central Pawn inventory.

On May 30, 2011, Budd advertised the mower on Craig's List, asking $4,500.

Budd was called by a man who said he worked at a lawn service company, and said his boss asked him to come by and see the mower. After several phone conversations, two white males arrived at the storage facility in a tan Chevrolet Tahoe. The males walked into the building, and after 15 minutes of looking around, identified themselves as Kansas City, Missouri police officers.

The officers had gone to the pawnshop for the express purpose of seizing the mower.

The officers told Budd they had videotape of him stealing the mower and that he was going to jail. Budd asked to see a warrant and his request was ignored. The Missouri officers told Budd that he was under arrest and continued to search his property. Budd alleges that while they conducted the search, they restrained his freedom by words, acts,

2

threats, and personal violence. He was never read his Miranda rights by any Missouri Officer.

The Missouri Officers were operating outside of their jurisdiction in the State of Kansas, without a search warrant, without an arrest warrant, and without any Kansas law enforcement officers present.

After several minutes, a Kansas City, Kansas police car arrived on the premises and two Kansas City, Kansas officers placed Budd in handcuffs and again told him he was under arrest. No Kansas officer read Budd his Miranda rights.

While in handcuffs in the squad car, Budd told the officer that he was the owner of Central Pawn and to contact Detective Scott Todd or Major John Cosgrove, both of the Kansas City, Kansas Police Department, for information proving that he was a licensed pawn broker and in lawful possession of the mower. He asked the Kansas officers how they had identified the mower as the alleged stolen property belonging to another.

The officer admitted that the alleged previous owner did not have the serial number of the mower, but that a tear in the cushion and a black pulley were the identifying factors for the police. Budd stated that a cushion tear and black pulley are likely to appear on most used standup mowers.

Budd overheard the Missouri officers read the serial number of the confiscated mower on the phone to the alleged victim, and the officers then announced aloud that the alleged victim was coming to retrieve the mower.

Budd expressed Central Pawn's interest in the property and said he would like to have a due process hearing as Kansas law requires. After much discussion, Budd was informed that a Kansas City, Kansas property truck would take the mower to the property room.

The entire incident took approximately three hours, and before it was over, six officers from the Kansas City, Missouri Police Department, four officers from the Kansas City, Kansas Police Department, and three cars from each police department were on his property.

For hours after the incident, several passersby and neighbors called with questions.

Budd alleges that, despite assurances by Police Major John Cosgrove and Detective Mark Bundy to the contrary, the mower was released on June 1, 2011, to the alleged owner without any due process hearing.

Budd filed a Petition in the Wyandotte County, Kansas District Court (Case No. 12-CV-795), alleging a claim (Count 1) against all the defendants for violation of 42 U.S.C. § 1983 and 1985 by acting under color of state law to deprive him of his constitutional "rights, including rights of freedom from illegal confinement, unlawful and illegal searches, unlawful taking of property, physical abuse, unreasonable use of force, coercion, and intimidation." (Dkt. 1, at 23, ¶ 45). Budd separately charges the Missouri Officers with false imprisonment (Count 2) and assault (Count 3), and the Unified Government with deprivation of property without due process (Count 4).

The Kansas defendants, including the Unified Government and Officers Cheryl Purington and Daniel Myers, removed the state court Petition to this court on July 9, 2012.

*Kansas Defendants*

Here, the Petition's assertion that Kansas City, Kansas police officers "encouraged, instigated, participated in, and/or assisted" in the search, Budd's arrest, and taking of the mower. These are precisely the sort of formulaic and conclusory recitations condemned in *Twombly* and *Iqbal*. The Petition clearly indicates that the Missouri officers had commenced the search of the house before Purington and Myers arrived. The Petition makes no allegation that Purington and Myers, who are mentioned only in passing in Paragraphs 4 and 5 of the Petition, actually aided in the search in any significant way.

The refined pleading standard articulated in *Twombly* and *Iqbal* is not "a significantly heightened fact-pleading standard create," but a plaintiff must still present something more that mere labels, conclusions, or a formulaic recitation of the elements. *Khalik v. United Air Lines,* 671 F.3d 1188 (10th Cir. 2012). Specific factual allegations are not required, and the plaintiff need not establish a prima facie case in his complaint. But the complaint must supply some context for the allegations beyond sheer speculation. 671 F.3d at 1195. "'[T]he complaint [must] make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.'" *Kansas Penn Gaming, LLC v.*

5

*Collins*, 656 F. 3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir.2008)).

With respect to the arrest, the Petition acknowledges that the Missouri officers were in contact with the victim, claimed to identify the mower as stolen, and asserted that they had videotape of Budd doing the stealing. The Petition supplies no rationale as to why the Kansas officers should have ignored the unequivocal statements of the Missouri officers that the mower was stolen property. Given the representations of the Missouri officers, Purington and Myers had probable cause to believe Budd violated K.S.A. § 21-5801(a)(4) by possessing stolen property. Because Budd fails to allege any basis for concluding that Purington and Meyers lacked probable cause for the arrest of Budd given the statements by the Missouri officers, dismissal is appropriate. The Petition offers no basis for determining how, individually, Purington and Myers were personal involved in the alleged constitutional violation. *See Fogarty v. Gallegos*, 523 F. 3d 1147, 1162 (10th Cir. 2008) (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997). In addition, the Petition fails to allege that Purington or Meyers played any role in the seizure of the mower.

Similarly, the court grants the motion to dismiss on behalf of the Unified Government. Generally, a municipality is not responsible under 42 U.S.C. § 1983 for the actions of its agents. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Budd has not shown any violation of any constitutional rights by Purington or Meyers, or by any other agent of the Unified Government, and has identified no specific policy or custom which resulted in any injury to the plaintiff.

The court denies the motion as it relates to Count 4, involving the release of the mower. Budd correctly points out that as a pawn broker, he has due process rights under Kansas law in the disposition of allegedly stolen property. *In re Two Bose Speakers*, 17 Kan. App.2d 179, Syl ¶ 4, 835 P.2d 1385, *rev. denied* 251 Kan. 938 (1992). However, the same authority recognizes that the pawnbroker "cannot acquire good title from a thief as against the true owner of the property." *Id.* at Syl. ¶ 5.

Contrary to plaintiffs' Response to the motion to dismiss (Dkt. 13, at 7), the Petition does *not* allege that the mower was not stolen. Rather, it artfully alleges only that "In the purchase agreement, Rodriguez warranted that the mower was not rented, leased, stolen, or the property of anyone else in whole or in part." (Dkt. 1, at ¶ 18). The Petition avoids any direct allegation that the mower was not released to its rightful owner under K.S.A. 22-2512.

The Petition thus does not directly allege that Budd lost the value of the mower as it was released to other than its true owner. However, "[e]ven when one does not prove any compensable damages from a due process violation, under Section 1983 a cause of action and nominal damages remain available." *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1286 (2007). Because the Petition advances at least a colorable claim of due process violation, the court will allow Count 4 to proceed.

Finally, the Kansas defendants seek dismissal of the conspiracy claim under 42 U.S.C. § 1985 asserted in Count 1, arguing that the Petition gives no information at all as to the elements of the supposed conspiracy, or demonstrating that the supposed

7

conspirators were motivated by a discriminatory animus. *See United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983). Budd does not respond to the § 1985 argument in his Response, and the court accordingly dismisses the claim as to the Kansas defendants.

*Missouri Defendants*

The Missouri defendants have filed two separate motions to dismiss, the first (Dkt. 3) on behalf of defendants Mark Johnson, Mark Porter, and Thomas Butkovich, and the second (Dkt. 33) on behalf of Robert Deyaeghere, Rodney Gentry, Richard Monroe.

Johnson, Porter, and Butkovich argue that dismissal is appropriate because the allegations against them in the Petition are purely conclusory. They contend that the Petition fails to allege that the defendants lacked probable cause for Budd's arrest, and does not specify which of the officers was allegedly violent. They also argue that the § 1985 claim lacks any specificity as to the alleged conspiracy, and that Johnson and Porter are entitled to qualified immunity, as it was not clearly established that they should not arrest Budd outside their jurisdiction. The motion on behalf of Deyaeghere, Gentry, and Monroe makes identical arguments.

The court grants in part and denies in part the motion to dismiss. With respect to Counts 1 and 2, the court finds that the Petition presents a colorable claim of illegal search and false arrest against the Missouri defendants. Importantly, the Missouri defendants were operating without a warrant and outside of their proper jurisdiction, and have cited no exigent circumstances justifying such action.

8

Of course, if probable cause existed for Budd's arrest, his claims of false arrest and malicious prosecution are both subject to dismissal. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (no claim under Fourth Amendment for arrest based on probable cause); *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996) (probable cause is a defense to claim for malicious prosecution). However, while Budd's claims in the Petition are threadbare, they may be read to assert a claim that the Missouri defendants acted outside the scope of their jurisdiction and without probable cause. At this stage in the action, the court must take as true Budd's assertion that the physical description of the mower was simply too generic to be reliable. Given this constraint, and the Petition's statement that the allegation of a videotape of the theft was false, the court finds that the Petition presents a colorable claim of illegal search and false arrest.

Similarly, the court cannot find that the defendants are entitled to qualified immunity, based upon the allegations of a lack of probable cause in the Petition. Both motions assert that "one would expect Kansas City, Missouri law enforcement officers to cooperate with Kansas City, Kansas law enforcement officers on a regular basis," (Dkt. 10, at 7), but defendants supply no authority for their argument. In contrast, the Tenth Circuit has directly held, in the case of an Oklahoma officer making a warrantless arrest on federal tribal land, that such arrests may violate constitutional norms.

> We have implied that an arrest made outside of the arresting officer's jurisdiction violates the Fourth Amendment to the Constitution and is therefore actionable pursuant to 42 U.S.C. § 1983 under the appropriate circumstances. We now so hold expressly. A warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless

9

> arrest without probable cause. Absent exigent circumstances, such an arrest is presumptively unreasonable.

*Ross v. Neff*, 905 F.2d 1349, 1354-55 (10th Cir. 1990) (citations omitted).

The court does dismiss Budd's claim for conspiracy under Count 1. The Petition gives no details as to the nature of the conspiracy, and Budd effectively abandons the claim in his respective Responses. (Dkt. 16, at 3 n. 1; Dkt. 36, at 3 n. 1)

IT IS ACCORDINGLY ORDERED this 7th day of February, 2013, that the Motion to Dismiss of the Kansas defendants (Dkt. 3) is granted, except as to Count 4, while the Motions to Dismiss of the Missouri defendants (Dkt. 10, 33) are granted as to the 42 U.S.C. § 1985 conspiracy claim in Count 1, but otherwise denied.

                                                    s/ J. Thomas Marten
                                         J. THOMAS MARTEN, JUDGE